**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| RUBY MCMULLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15CV16-WHA |
| | ) | (wo) |
| TUSKEGEE UNIVERSITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #42), filed by Tuskegee University on February 26, 2016.

The Plaintiff filed a Complaint in this case on January 8, 2015, bringing claims of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended (Count One) and breach of contract (Count Two).

This court has federal question subject matter jurisdiction over the Title VII claim and can exercise supplemental jurisdiction over the state law claim. 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

Case 3:15-cv-00016-WHA-GMB   Document 55   Filed 04/21/16   Page 2 of 16

317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.   Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56 (c)(1)(A),(B).   Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Plaintiff Ruby McMullen ("McMullen") was employed by Tuskegee University ("Tuskegee") as Director of Human Resources from December 2012 to January 21, 2014.

On December 2, 2013, Tracy Boleware ("Boleware"), a Tuskegee employee, filed a complaint alleging that the University Vice-President, Dr. Mohammad Bhuiyan ("Bhuiyan"), was harassing her in violation of Title VII.

Prior to December 2, 2013, the decision to terminate Boleware had been discussed. McMullen was not a part of that conversation.

McMullen attended a meeting with Bhuiyan and Darryl Crompton, General Counsel, where she was told that Boleware was going to be fired. Boleware had filed her complaint at that point. McMullen warned that Boleware was in a protected class and that the firing of Boleware might appear to be, or was, retaliation for the complaint. McMullen was told the University President, Dr. Matthew Jenkins ("Jenkins"), had decided that Boleware should be terminated.

Jenkins directed McMullen not to investigate Boleware's complaint, and told her that he had contracted the services of Kathryn Webb ("Webb"). Jenkins also met with McMullen and told her that he did not feel she was on his team and wanted to let her know where she stood. At this meeting, McMullen asked if she was being fired and was told she was not.

McMullen subsequently attended a meeting with Jenkins, Bhuiyan, Webb, and Crompton. The complaint by Boleware was discussed and Bhuiyan complained that McMullen did not warn them against terminating Boleware. McMullen protested that she had warned them in the initial meeting that the termination appeared to be retaliation.

On January 21, 2014, McMullen's employment was terminated. Prior to termination,

McMullen had not received discipline from Tuskegee.

## IV. DISCUSSION

### A. Retaliation

Title VII prohibits retaliation by an employer because an employee has opposed an unlawful employment practice. 42 U.S.C. §2000e-3(a). To demonstrate a *prima facie* case of retaliation, McMullen must show that (1) she participated in a statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there is a causal connection between the two. *Evans v. Books-A-Million*, 762 F.3d 1288, 1298 (11th Cir. 2014).

For purposes of the summary judgment motion, Tuskegee assumes that McMullen's discharge constitutes an adverse employment action. Tuskegee, however, disputes that McMullen can show that she engaged in protected activity.

McMullen identifies the following as protected activity: she states that she voiced opposition to the termination of Boleware during a meeting held on December 2, 2013, and in a meeting held the day of the University Christmas party, also in December 2013. She clarifies that she only contends, for purposes of the summary judgment motion, that her comments regarding Boleware's termination were protected activities. (Doc. #48 at p.15 n.10).[1]

Tuskegee advances two arguments for why McMullen cannot demonstrate that she

---

[1] McMullen refers to the termination of an additional employee, Fred Judkins, in a footnote. She responds to Tuskegee's argument that Judkins' complaint was under the FMLA, not Title VII, by stating that the FMLA leave was related to a claim of harassment. She goes on to say, however, that the court "need not address whether the activity relating to Judkins is covered by Title VII." (Doc. #48 at p.15 n.10). Even if McMullen intended to assert a separate retaliation claim based on Judkins' complaint, however, the analysis of that claim would be the same as her claim based on her actions with regard to Boleware's termination.

engaged in protected activity. Tuskegee states that McMullen did not have a subjective good faith belief that was objectively reasonable that she was opposing retaliation, citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (stating that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he can "show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.")(emphasis in original). Tuskegee also argues that under the so-called "manager rule," *Brush v. Sears Holding Corp.*, 466 F. App'x 781 (11th Cir. 2012), McMullen did not engage in a protected activity because the actions she took were in the context of her employment.

Tuskegee points out that at many points in her brief, in her deposition testimony, and in her EEOC charge, McMullen states that she complained that Boleware's termination would appear retaliatory. For example, in her EEOC charge, McMullen stated that she had advised her employer not to terminate an employee who had filed an internal complaint because the termination would appear retaliatory (Doc. #41-15). In her deposition, McMullen testified that Boleware had just presented a complaint so her termination "would appear to be retaliatory." (Doc. #49-3 at p.226: 3-10). McMullen also testified in her deposition that she "distinctly" remembers saying that because Boleware "presented this complaint, it gives the appearance of retaliation." (Doc. #49-3 at p.224:20-23). She stated in her deposition that she asked why the decision makers did not "wait and do this later," that she "advised against it," and that without enough documentation, the termination would appear to be retaliatory. (Doc. #49-3 at p.225:1-226:10). McMullen also testified that in a meeting with Jenkins, Webb, Bhuiyan, and Crompton following Boleware's termination, she said that she had specifically told them that because Boleware had brought a complaint in, "that's protected category. It's going to give the

5

appearance of retaliation."  (Doc. #49-3 at p.246: 16-21 and 275:1-5).

Tuskegee argues in light of this testimony that there is no evidence that McMullen subjectively believed that the employer was engaged in an unlawful employment practice. Instead, McMullen was only warning that termination of Boleware at that time would have an appearance of retaliation.

In her Amended Objections and Responses to Defendant Tuskegee University's First Interrogatories and First and Second Requests for Production of Documents to Plaintiff ("Responses to Interrogatories"), McMullen states that she advised the Defendant not to terminate Boleware's employment and opposed the termination as being unlawful retaliation. (Doc. #49-1). In a footnote, she states that she advised Crompton and Bhuiyan not to proceed with the termination because Boleware was in a protected category and engaged in a protected activity, that there was not adequate information to justify termination, and "proceeding with termination would be retaliatory in violation of Title VII.  The gentlemen rejected her advice."  (Doc #49-1 at p.6). She states in the Responses to Interrogatories that during the meeting held after Boleware's termination, she reiterated that she had complained that terminating Boleware would be retaliation. (Doc. #49-1 at p.6).

Because this court must consider all of the evidence presented in a light most favorable to the non-movant,[2] the court will consider the Responses to the Interrogatories as evidence that McMullen advised Compton and Bhuiyan that there was not adequate information to justify Boleware's termination, so proceeding with the termination would be retaliation, supporting a finding that she subjectively believed that Tuskegee retaliated against Boleware.

As to whether McMullen's belief was objectively reasonable, Tuskegee argues that it is

---

[2] Tuskegee has not objected to the admissibility of this evidence.

undisputed that McMullen knew the decision to terminate Boleware had been made at the time of Boleware's complaint. Tuskegee points to McMullen's deposition in which she said, "Yes, I think so," when asked whether the decision had been made to terminate Boleware, and then Boleware walked in with her complaint. (Doc. #49-3 at p. 223:8-12). When asked whether it was an accurate statement that "the decision to terminate Ms. Boleware was discussed during the week prior to December 2, 2013," McMullen answered, "[b]ased on the information that I was given, yes." (Doc. #41-1 at p.217:7-14). McMullen also stated in her deposition that during the December 2nd meeting she was told that Jenkins wanted Boleware gone. (Doc. #49-3 at p.225: 16-19). In an email to Bhuiyan dated December 5, 2013, McMullen stated "it was purely coincidental that she filed a complaint on the same day you had already decided to terminate her employment." (Doc. #41-19).

In a footnote in her brief in opposition to summary judgment, McMullen states that she disputes knowing a decision had been made to terminate Boleware prior to December 2. (Doc. #48 at p.13 n.6). The deposition excerpts she has cited in support of this statement, however, only state that she was not present at a meeting about Boleware's termination before December 2 (Doc. #49-3 at p.217: 18- 218:02), and that McMullen does not agree that someone knew and told Boleware about her termination before December 2. (Doc. #49-3 at p.235: 10-21).[3] This evidence does not call into question the affirmative evidence that Boleware's termination had been decided, or at least discussed, before Boleware made her complaint. Therefore, the court finds that the

---

3 In the cited portion of the deposition, McMullen states that there was a constant back and forth between Boleward and Bhuiyan in response to the question of whether McMullen thought anyone knew about the termination decision before December 2. (Doc. #49-3 at p.235:10-21). The question immediately preceding that one was why Bhiyuan accused McMullen of telling Boleware that she was going to be terminated, and she answered that he thought because Boleware made the complaint, that someone had told her she was going to be terminated. (Doc. #49-3 at p.235: 3-9).

evidence, even construed in the light most favorable to the non-movant, is that McMullen knew that Boleware's termination was discussed before Boleware made her complaint.

The objective reasonableness of an employee's belief must be measured against existing substantive law. *Clover v. Total Sys. Services, Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). "When an employer makes a tentative decision before protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation." *Saffold v. Special Counsel, Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). Therefore, even if the decision to terminate Boleware was not finalized at the time Boleware filed her complaint, a belief that following through with that decision was retaliation would not have been objectively reasonable. McMullen has, therefore, failed to create a question of fact as to whether she held an objectively reasonable belief that her employer had engaged in unlawful activity. Summary judgment is due to be GRANTED as to the retaliation claim for failure to establish a prima facie case on that basis.

Alternatively, even assuming the evidence supports a finding that McMullen was not aware that the decision had been made or discussed to terminate Boleware at the time of Boleware's complaint, so that McMullen had an objectively reasonable belief that Boleware's termination was retaliatory, the court finds that summary judgment would be due Tuskegee under the "manager rule." The "manager rule" was described by the Eleventh Circuit in *Brush*, as follows: "a management employee that, in the course of her normal job performance, disagrees with or opposes the actions of an employer, does not engage in 'protected activity.'" *Brush*, 466 F. App'x at 787. Instead, the employee engages in a protected activity if she crosses the line from being an employee performing her job, to an employee lodging a personal complaint. *Id.*

In *Brush*, the court looked at the facts adduced by the parties and concluded that there was

no dispute that the plaintiff acted as a manager because in her capacity as an investigator of a sexual harassment claim, she investigated allegations and reported the results of her investigation. *Id.* She claimed that she was terminated because she uncovered that the employer had negligently allowed three rapes and had done nothing about it, because she opposed the employer's investigation, and disagreed with the decision not to inform the police. *Id.* at 784.   The Eleventh Circuit reasoned that disagreement with internal procedures is not the same as opposing a discriminatory practice.   *Id.* at 787.   The court found no evidence that the plaintiff was asserting any rights or that she took any action adverse to the company during the investigation.   *Id.*   The court stated that because the plaintiff's complaint involved the adequacy of the employer's internal procedure for receiving complaints rather than an unlawful employment practice, she did not satisfy the first element of a prima facie case.   *Id.* at 788.

McMullen urges this court not to follow *Brush*, pointing out that it is an unpublished opinion and, therefore, merely persuasive authority.   Although *Brush* is persuasive and not binding authority from the Eleventh Circuit Court of Appeals, the "manager rule" has also been applied in Title VII cases decided by district courts within the circuit, including in this district. *See Cyrus v. Hyundai Motor Mfg. Ala.*, *LLC*, No. 2:07cv144, 2008 WL 1848796 (M.D. Ala. Apr. 24, 2008); *Fletcher v. Supreme Beverage Co.,* No. 2:11-CV-00056-MHH, 2014 WL 5518294, at *17 (N.D. Ala. Oct. 31, 2014)*, appeal dismissed* (May 11, 2015); *Raney v. Paper & Chemical Supply, Co*., No. 5:10cv445, 2012 WL 1745611 (N.D. Ala. Apr. 24, 2012).   Therefore, the court is persuaded that the "manager rule" can apply in a Title VII case.

McMullen alternatively argues that if this court were to find that the "manager rule" can apply in a Title VII case, *Brush* is distinguishable from the facts in this case.   McMullen contends her opinion as it related to Boleware's termination was expressed as a reaction to a decision in

which she not involved.   (Doc. #48 at p.22).

In support of the application of the "manager rule" in this case, Tuskegee points to deposition testimony of McMullen such as her testimony that she "advised" Bhuiyan and Crompton not to terminate Boleware at that time because Boleware had just presented a complaint and termination would "appear to be retaliatory." (Doc. #49-3 at p. 2259-226:10).

McMullen has taken two positions in this case as to the opinion she expressed in reaction to the decision to terminate Boleware.   She has presented evidence that she informed Tuskegee that the decision to terminate Boleware would appear to be retaliatory, and, as noted above, has stated in her Reponses to Interrogatories that she said the decision was retaliatory.   With respect to testimony that McMullen advised that the termination of Boleware might "appear" to be retaliatory, even assuming such a statement is one of an objectively reasonable belief that the employer was engaged in an unlawful employment practice, it clearly is not a protected activity under the "manager rule."

In a case cited in *Brush*, the Tenth Circuit has addressed a similar retaliation theory.   *See McKenzie v. Renberg's Inc*., 94 F.3d 1478 (4th Cir. 1996).   In that case, the plaintiff, a Personnel Director, reported what she thought were possible wage and hour violations to her employer. Although she had no warnings about her job performance, and despite her testimony that there was a company policy that required progressive discipline, she was discharged.   In finding that her termination did not constitute retaliation, the court reasoned that it is the assertion of statutory rights by taking an action adverse to the company that is a protected activity.   *McKenzie*, 94 F.3d at 1486.   The court explained that because the plaintiff merely informed the company that it was at risk of claims that might be instituted by others as a result of alleged statutory violations, which was included in her job responsibilities, she did not engage in a protected activity.   *Id.* at 1486-87;

*see also E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998) (finding protected activity where plaintiff refused to implement a discriminatory company policy as contrasted with the facts of *McKenzie* where the personnel director "merely alerted management of potential violations of the law in order to avoid liability for the company."). In this case, the evidence that McMullen told others at Tuskegee that they should delay terminating Boleware's employment because it might appear to be retaliatory was not a personal complaint, but was instead advice that termination could appear to be retaliatory, and therefore expose Tuskegee to liability, was not protected activity. *McKenzie* at 1486-87.

With respect to the theory that McMullen herself thought Boleware's termination was retaliation, not merely the appearance of retaliation, the "manager rule" still applies in this case. As noted, in her Responses to Interrogatories, McMullen stated that she advised Crompton and Bhuiyan "not to proceed with the termination because Ms. Boleware was in a protected category and engaged in protected activity," and "advised there was not adequate information to justify termination, and proceeding with termination would be retaliatory in violation of Title VII. The gentlemen rejected her advice." (Doc. #49-1).

In *McKenzie* the defendant argued that the act of reporting good faith concerns about statutory violations was not protected activity, and the court agreed that because the personnel director in that case never crossed the line from performing her job to an employee lodging a personal complaint or actively assisting others in asserting their rights and asserting a right adverse to the company, there was no protected activity. *McKenzie*, 94 F.3d at 1486. The *McKenzie* court also reasoned that a plaintiff's actions were consistent with her duties as personnel director to evaluate wage and hour issues and "assist the company in complying with its obligations." *Id.* at 1487.

11

This application of the "manager rule" also applies under the Eleventh Circuit's view of the rule. In its unpublished opinion, the Eleventh Circuit relied on the characterization of the "manager rule" in *McKenzie*, stating that a management employee who in the course of her normal job performance disagrees with or opposes the actions of the employer does not engage in protected activity. *Brush*, 466 F. App'x at 787. "A requirement of 'stepping outside' a normal role is satisfied by a showing that the employee took some action against a discriminatory policy." *E.E.O.C.*, 135 F.3d 543 at 554.

McMullen argues that because she was not involved in making the decision to terminate Boleware, her comments of opposition were not made in the course of her normal job performance. McMullen testified in her deposition, however, that it was part of her job duties to share with the Vice President in the "presence of legal," that she thought documentation did not support a termination or that "an employee had presented a document that put them in what [she] considered a protected class." (Doc. #41-1 at p.300:18-23 and Doc. #49-3 at p.301:1-4). She also states in her brief that her job duties included "advising on termination decisions." (Doc. #48 at p.22). In her deposition, McMullen was asked whether she was doing something personal or doing something that was part of her job duties, and she answered "I thought it was part of, you know, my responsibility to tell him that I thought that would appear to be retaliatory." (Doc. #41-1 at p. 298:5-20). When asked whether it was part of her job as Human Resources Director to tell a supervisor if she had concerns about a termination, she said she "thought so." (Doc. #41-1 at p.298: 21-299 at p.2). In the Responses to Interrogatories, she stated that her criticism of Boleware's termination was offered as "advice," which was rejected. (Doc. #49-1 at p.5 n.2). In addition, McMullen did not refuse to implement the decision, but herself informed Boleware that the decision had been made to terminate Boleware's employment. (Doc. #49-3 at p. 227:2-5).

The evidence before the court, therefore, is that McMullen's actions were taken in the course of her employment duties, not in a personal role and, therefore, were not protected activities. *See Fletcher v. Supreme Beverage Co.*, No. 2:11-CV-00056-MHH, 2014 WL 5518294, at *2 (N.D. Ala. Oct. 31, 2014) (finding that the plaintiff did not engage in protected activity because "he did not lodge a personal complaint about racial discrimination."); *Dunn v. Wal-Mart Stores E., L.P.*, No. 1:11-CV-21756, 2013 WL 1455326, at *7 (S.D. Fla. Apr. 9, 2013) (finding that the plaintiff did not participate in protected activity because the policy required the plaintiff to report any discrimination outside of the store management, she was acting within her responsibilities); *see also Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 628 (5th Cir. 2008) (stating that to engage in protected activity within meaning of Fair Labor Standards Act, plaintiff must do something outside her job duties "or otherwise make clear to the employer that he was taking a position adverse to the employer."). Summary judgment is, therefore, due to be GRANTED on this alternative basis.

Given the court's conclusion that McMullen has failed to establish a prima facie case of retaliation, the court need not address the arguments regarding "but for" causation and pretext. Summary judgment is due to be GRANTED as to McMullen's retaliation claim.

### B.  Breach of Contract

The Eleventh Circuit Court of Appeals has stated that an employment relationship is permanent, and not terminable "at will," if: (1) there was a clear and unequivocal offer of permanent employment, (2) the employee provided some substantial consideration for the contract apart from the services rendered, and (3) the individual making the offer had power to bind the employer. *Green v. City of Hamilton, Housing Authority*, 937 F.2d 1561, 1564 (11th Cir. 1991).

Tuskegee moves for summary judgment on the basis that the provisions of the Tuskegee employee handbook make it clear that employment is at will and that McMullen never used the grievance procedure to appeal the termination decision. The handbook states that it is "not to be interpreted as a legal document or employment contract." (Doc. #41-3 at p.4). With respect to the progressive disciplinary policy, Tuskegee points out that the policy also authorizes immediate dismissal and states that employees can be terminated immediately and without warning. (Doc. #41-3 at p. 9). The handbook further provides that the list of activities that can lead to immediate dismissal "is intended to be representative of the types of activities that may result in disciplinary action. It is not exhaustive, and is not intended to be comprehensive and does not change the employment-at-will relationship between the employee and Tuskegee University." (Doc. #41-3 at p.9). The Memorandum of Record, Receipt for University Staff Handbook, signed by McMullen, states

> I understand and agree that nothing in the Employee Handbook creates, or is intended to create: a promise or representation of continued employment and that employment at Tuskegee University is employment at-will, which may be terminated at the will of either Tuskegee University or me. Furthermore I acknowledge that this handbook is neither a contract of employment or a legal document.

(Doc. #41-23 at p.2).

McMullen's breach of contract theory is that she had an implied contract which was denied when she was prohibited from answering charges against her. McMullen's position is that the disciplinary provisions in a handbook can create a contract. In support of this position, she cites *Black v. Reynolds* (*Black II*), No. 14-0442-WS-N, 2016 WL 375149 (S.D. Ala. Jan. 29, 2016).

In an opinion issued prior to the one cited by McMullen, *Black v. Reynolds* (*Black I*), No. 14-0442, WS-N, 2015 WL 878114 (S.D. Ala. Dec. 15, 2015), the court distinguished between a contract for permanent employment created by a handbook and a contract right created based on

policies within the handbook, but expressed skepticism as to the latter theory. *Id.* at *8. Upon reconsideration, in the opinion cited by McMullen, the court reasoned that for the policy provisions of an employee handbook to become contractual, the employer must have extended them in the form of an offer. *Black II*, 2016 WL 375149, at *1. The court explained that the analysis is the same whether the employee claims the handbook created a contract for permanent employment or created a contract that policies within the handbook must be followed. *Id.*

In a case relied on in *Black II*, 2016 WL 375149, at *1, another judge of this district also addressed the argument that a breach of employment contract occurred where a plaintiff suffered discrimination in violation of the policies of the handbook. *Carr v. Stillwaters*, 83 F. Supp. 2d 1269, 1278-9 (M.D. Ala. 1999) (Thompson, J.). In *Carr*, the court found as a matter of law that language stated in the employer's policies did not create a contract, and in finding no contract, the court specifically noted a provision in the handbook listing "examples of unacceptable activities and adding, "This list is not an all [sic] inclusive and, notwithstanding this list, all employees remain 'employed at will.'" 83 F. Supp. 2d at 1279 n.25.

The handbook at issue in the instant case clearly states that it does not create an employment contract. It also states that any employee whose conduct conflicts with Tuskegee's policies may be terminated immediately and without warning, and that by listing examples of grounds for immediate dismissal, Tuskegee has not changed the "employment-at-will relationship." (Doc. #41-3 at p.9). McMullen acknowledged that her employment could be terminated at will and that the handbook was not a legal document. (Doc. #41-23 at p.2). This court concludes, therefore, that there is no implied contract that discipline policies within the handbook must be followed. *See Carr*, 83 F. Supp. 2d at 1279. Summary judgment is due to be GRANTED as to the breach of contract claim.

## V. CONCLUSION

For the reasons discussed, the Motion for Summary Judgment is due to be and is hereby ORDERED GRANTED. A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 21st day of April 2016.

/s/ W. Harold Albritton
W.   HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE